IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIO DAVIS,<br><br>    Petitioner,<br><br>  v.<br><br>S. W. ORNOSKI, Warden,<br><br>    Respondent. | No. C 06-0488 WHA (PR)<br><br>**DENIAL OF PETITION FOR WRIT OF HABEAS CORPUS** |

This is a habeas corpus case filed by a state prisoner pursuant to 28 U.S.C. 2254. The court ordered respondent to show cause why the writ should not be granted. Respondent has filed an answer and a memorandum of points and authorities in support of it, and has lodged exhibits with the court. Petitioner has responded with a traverse. For the reasons set forth below the petition is **DENIED**.

## STATEMENT

A San Francisco jury convicted petitioner of first degree burglary. *See* Cal. Pen. Code § 459. Because it was his fifth strike, he was sentenced to twenty-five years to life in prison. His conviction was affirmed on direct appeal by the California Court of Appeal, and the California Supreme Court denied review. Petitioner also filed state habeas petitions, all of which were unsuccessful.

The following description of the facts is taken from the opinion of the California Court of Appeal:

William Marci owns a ground floor unit in a 20-unit "mixed-use" building located at 1097 Howard Street in San Francisco. In March of 1999, Marci was in the process of completing construction of a residence in his unit and was living there on a part-time basis. There were several large windows in the unit that had been recently installed and were covered with thick brown paper for privacy.

On the evening of March 27, 1999, Marci and his girlfriend, Danielle Borel, arrived at Marci's unit between 11:00 p.m. and midnight and then went to bed. At approximately 3:45 a.m., Marci was awakened by a deep "seismic sound" but then fell back to sleep for an unknown amount of time. Thereafter, Marci and Borel heard the sound again followed by the sounds of paper tearing, glass breaking, a crash on the floor, and a person coming through the window. Marci called 911 while holding his bedroom door shut. Through the translucent glass in the bedroom door, Marci and Borel saw a shadow of a single person walk past the bedroom and down the hallway of Marci's residence. Marci and Borel attempted to remain quiet so the intruder would not discover them. Moving at a steady pace, the person went up and down the hallway a few times.

Marci and Borel heard the intruder climb an interior staircase and enter the office space located directly above the bedroom. Almost simultaneously, the 911 operator informed Marci that police had arrived outside the building. Seeing an opportunity to escape without confronting the intruder, Marci and Borel ran out the front door of the unit. When the police entered the unit, they found Davis exiting a laundry closet located at the top of the staircase. Police handcuffed Davis on the staircase and removed a screwdriver from his pocket.

In the laundry closet, the police found several items on top of a laundry basket full of clothes. Two of the items, a wad of foreign currency and a pair of cufflinks in a box, did not belong to Marci or Borel. The other items, including Marci's wallet, empty money clip, pager, PDA device, cell phone charger and car keys, had been moved from the kitchen counter. When Marci left his money clip on the counter, it contained $520. That cash was never located.

Two of Marci's CD players and Borel's backpack, which contained her laptop computer, had been moved to the hallway near the broken window. Davis's fingerprints were on the stereo equipment.

Davis was charged with first degree burglary. (Pen Code, § 459.) [FN1 Unless otherwise indicated, all statutory references are to the Penal Code.] The defense theory was that an unknown person removed a window and entered Marci's unit before Davis arrived and that person stole money from Marci's money clip. Then later, defense counsel argued, Davis found the open window frame, assumed the building was vacant and climbed inside because he was homeless and needed a place to sleep. Defense counsel maintained that Davis entered without an intent to steal and thus was guilty of trespass but not burglary.

A jury found Davis committed burglary. Thereafter, the jury found Davis had suffered four prior first degree burglary convictions. The trial court denied Davis's motion to strike the four prior strike convictions. (See § 667, subds. (d) & (e), § 1170.12, subds. (b) & (c).) However, the court granted the prosecutor's motion to dismiss two five-year sentence enhancements. (See § 667, subd. (a).) Davis was sentenced to a prison term of 25 years to life.

(Exh. I at 1-3.)

**DISCUSSION**

**A.    STANDARD OF REVIEW**

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, falls under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *See id.* at 409.

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." *Miller-El*, 537 U.S. at 340. This presumption is not altered by the fact that the finding was made by a state court of appeals, rather than by a state trial court. *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981); *Bragg v. Galaza*, 242 F.3d 1082,

3

1087 (9th Cir.), *amended*, 253 F.3d 1150 (9th Cir. 2001). A petitioner must present clear and convincing evidence to overcome § 2254(e)(1)'s presumption of correctness; conclusory assertions will not do. *Id.*

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th Cir.2000).

**B.   ISSUES PRESENTED**

As grounds for federal habeas relief, petitioner asserts that: (1) the prosecutor committed misconduct by referring to his failure to testify and to his post-arrest silence as evidence of guilt; (2) the prosecutor committed misconduct by denigrating defense counsel, urging the jury to punish petitioner for going to trial, and referring to evidence not in the record; and (3) his jury trial rights were violated when the question of his identity as the person previously convicted was not presented to the jury in the trial of the allegations of previous conviction.

**1.   PROSECUTORIAL MISCONDUCT – *DOYLE* AND *GRIFFIN* CLAIMS**

**a.   *Griffin* Claim**

Where a prosecutor on his own initiative asks the jury to draw an adverse inference from a defendant's silence, or to treat the defendant's silence as substantive evidence of guilt, the defendant's privilege against compulsory self-incrimination is violated. *Griffin v. California*, 380 U.S. 609, 615 (1965). While it is proper for the prosecution to address the defense arguments, a comment is impermissible if it is manifestly intended to call attention to the defendant's failure to testify, or is of such a character that the jury would naturally and necessarily take it to be a comment on the failure to testify. *Lincoln v. Sunn*, 807 F.2d 805, 809 (9th Cir. 1987). However, such commentary by the prosecutor requires reversal only if "(1) the commentary is extensive; (2) an inference of guilt from silence is stressed to the jury as a basis

for the conviction; and (3) where there is evidence that could have supported acquittal." *Jeffries v. Blodgett*, 5 F.3d 1180, 1192 (9th Cir. 1993) (citation omitted), *cert. denied*, 510 U.S. 1191 (1994). Put differently, such improper commentary warrants reversal only if it appears that it may have affected the verdict. *See Lincoln*, 807 F.2d at 809.

Petitioner contends that the prosecutor violated *Griffin* in three instances. As to the first, the court of appeal said: "[f]irst, the prosecutor said: 'He [defense counsel] has the power to subpoena just as I do.'" (Exh. I at 4.) The court of appeal concluded that the "prosecutor made this statement to underscore his point that the defense failed to rebut expert evidence that Davis's fingerprints were on Marci's stereo equipment[,]" and held that "[t]his statement clearly did not violate Griffin since (1) the prosecutor obviously was not suggesting that Davis should have subpoenaed himself as a witness; and (2) Davis was not an expert who could have refuted the fingerprint evidence." (*Ibid.*) The court of appeal was obviously correct on this point; the prosecutor's statement simply did not comment on petitioner's silence. There was no *Griffin* error as to this comment.

The second comment was: "'We do not know anything about Mr. Davis. We do not no [sic] anything about him.'" (*Ibid.*) The court of appeal then concluded that "[t]his comment was a response to an assertion in defense counsel's opening statement that Davis was homeless. The prosecutor was pointing out that the defense failed to produce any evidence to support that assertion. Since Davis's direct testimony was not the only way to show he was homeless, the prosecutor's statement cannot fairly be interpreted as referring to Davis's failure to testify." (*Ibid*.) A prosecutor's comments are not improper under *Griffin* when they simply point out to the jury that the defense has failed to present evidence on one point or another, as long as the subject is not one where only the defendant's testifying could constitute such evidence. *United States v. Mende*, 43 F.3d 1298, 1301 (9th Cir. 1995). As to these comments, petitioner himself obviously was not the only possible source of evidence about him and his manner of life. Permitting this comment was not *Griffin* error.

///

///

5

As to the third comment, the court of appeals said::

> Finally, the prosecutor stated: "We don't know anything about Mr. Davis." This statement was part of the prosecutor's argument that the theory set forth in defense counsel's opening statement, that Davis was guilty of trespass but not burglary, was not supported by any evidence. The prosecutor summarized the defense theory by quoting from defense counsel's opening statement as follows: "Larry was walking down Howard at 3:50. He saw an open window frame on a building that looked commercial. The window was on the sidewalk. Larry Davis was homeless. He wanted to get out of the cold[.]" The prosecutor argued there was no evidence to support this theory and pointed out that "[w]e don't know anything about Mr. Davis. We don't know where he was before he was arrested inside that premises...." This statement was not a reference to defendant's failure to testify. It was an observation about the state of the evidence intended to advance the prosecutor's argument that the defense theory was not supported by any evidence adduced at trial.

(Ex. I at 5.)

As the court stated in *Mende*, "[t]here is a difference between a comment on the defense's failure to present exculpatory evidence as opposed to a comment on the defendant's failure to testify." 43 F.3d at 1238. Comment on the failure to present exculpatory evidence is proper, as long as "it is not phrased to call attention to defendant's own failure to testify." *Ibid.* (internal quotation marks and citations omitted). The comment here was not phrased to call attention to petitioner's failure to testify, and was a comment on the absence of evidence, not specifically a comment on petitioner's failure to take the stand. There was no *Griffin* error as to this comment.

**b.    *Doyle* Claim**.

Petitioner also contends that the prosecutor committed misconduct by commenting on his silence after being given *Miranda* warnings.[1]

Post-arrest silence after *Miranda* warnings cannot be commented upon or used by the prosecution. *Doyle v. Ohio*, 426 U.S. 610, 611 (1976). Petitioner contends that an argument made by the prosecutor in rebuttal, after defense counsel had accused police of fabricating evidence against his clients, violated the *Doyle* rule:

> During his closing, defense counsel told the jury that a prosecution witness, Officer Furminger, falsely testified that he found a screwdriver on

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 473-74 (1966).

6

Davis's person. Counsel also accused the officer of putting Marci's personal items in the laundry basket in order to strengthen the case against Davis. The prosecutor offered the following response about which Davis now complains: "Don't you think they could have done a better job, if they really wanted to? If the argument is they framed this man, couldn't they have really done a better job? All they could do is plant some screwdriver on him? All they could do, according to the defense theory, was put some evidence in the laundry basket? Couldn't they have written the police report, 'Upon arrest, defendant Davis said, "Shit, I almost got away with the loot.' or 'Upon arrest, defendant Davis said, "I got the stuff, I needed some more, but I want to plea bargain." 'Upon arrest, defendant Davis said' -- I think you follow me, Ladies and Gentlemen of the jury. If they had wanted-really, if they had wanted -- if Officer Furminger had really wanted to make the facts worse for Mr. Davis, he could have done far, far better than these two acts counsel accuses him of-accuses him of committing."

(Exh. I at 6.)

In rejecting this claim, the court of appeal said: "Davis claims that this 'argument operated to inform the jury that appellant had made no statement to the police. That is the only conclusion that would 'follow' the prosecutor's words.' We disagree. There was no direct or indirect reference to *Miranda* or to Davis's actual conduct after he was arrested. In fact, it is not evident from this record whether Davis exercised his *Miranda* rights or not. The challenged comments by the prosecutor simply highlighted the inherent weakness in the defense theory that Davis was framed. No *Doyle* error occurred." (*Ibid.*)

Respondent contends that this claim was procedurally defaulted because it was not raised in trial court. The court of appeals agreed, though it also went on to consider the merits (*id.* at 5-6). The Ninth Circuit has recognized and applied the California contemporaneous objection rule in affirming denial of a federal petition on grounds of procedural default where counsel failed to object in trial court. *Inthavong v. Lamarque*, 420 F.3d 1055, 1058 (9th Cir. 2005); *Paulino v. Castro*, 371 F.3d 1083, 1092-93 (9th Cir. 2004); *Vansickel v. White*, 166 F.3d 953, 957-58 (9th Cir. 1999). Respondent, therefore, is correct that these issues are procedurally defaulted, and because petitioner has not shown cause and prejudice or a miscarriage of justice, *see Coleman v. Thompson*, 501 U.S. 722, 750 (1991), this claim is barred.

Alternatively, the claim has no merit. It is clear that the prosecutor's comment was not a comment on petitioner's purported silence, if in fact he was silent at questioning. It simply does not refer to what petitioner actually did when questioned at all, but only speaks of hypothetical

7

1 testimony that the police could have invented had they wished to frame him.  Whether
2 petitioner was or was not silent at questioning had absolutely nothing to do with whether the
3 police could have invented such stories, nor with the prosecutor's comments.  There was no
4 *Doyle* error.

### 2. PROSECUTORIAL MISCONDUCT – DUE PROCESS CLAIMS

Petitioner asserts that in closing argument the prosecutor denigrated the integrity of defense counsel, improperly urged the jury to punish appellant for exercising his right to a jury trial; and referred to excluded evidence.  This violated due process, he contends.

A defendant's due process rights are violated when a prosecutor's misconduct renders a trial "fundamentally unfair." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986); *Smith v. Phillips*, 455 U.S. 209, 219 (1982) ("the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor").  Under *Darden*, the first issue is whether the prosecutor's remarks were improper; if so, the next question is whether such conduct infected the trial with unfairness. *Tan v. Runnels*, 413 F.3d 1101, 1112 (9th Cir. 2005).  A prosecutorial misconduct claim is decided "'on the merits, examining the entire proceedings to determine whether the prosecutor's remarks so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Johnson v. Sublett*, 63 F.3d 926, 929 (9th Cir.) (citation omitted), *cert. denied*, 516 U.S. 1017 (1995).

The California Court of Appeal held that petitioner had not preserved error on this claim because he did not object.  For the reasons discussed above, the failure to object procedurally defaulted these claims.

Alternatively, the merits will be considered.  The first contention, that the prosecutor accused defense counsel of being foolish, was described thus by the court of appeal:

> Davis contends the prosecutor denigrated defense counsel by calling him foolish.  The prosecutor's comment was part of his response to defense counsel's effort to devalue the fingerprint evidence.  During his closing, defense counsel argued the fingerprint evidence was unnecessary since Davis was found in Marci's residence.  Counsel also suggested that police took fingerprints because they believed another person had broken into Marci's unit.  [FN5  Defense counsel argued: "[T]hey got a guy cold inside the premises; that's what they got.  Why the heck do they need any fingerprint evidence at all?  Why did they even order it?  Why bother? [¶] They got a guy inside.  What more do you need?  I

8

mean, how much resources do the police have? ... [¶] The reason-and this is an irony-this is sort of the ultimate irony of this case, is that the print data was done by Officer Furminger ... to try to pin up another suspect, to try to prove that there was somebody else involved...."]  On rebuttal, the prosecutor responded that defense counsel would surely have complained had the People failed to produce fingerprint evidence.  The prosecutor then argued the evidence was probative of an intent to commit burglary and of a consciousness of guilt and then made the following statement: "So, it's highly disingenuous, it's highly foolish for someone to say those fingerprints don't count, as counsel wants you to believe.  They're very important in this case, and that's why I gave them the attention I did.  I couldn't foresee that Mr. Fredrich, upon hearing the People's evidence, would go paws up and say, 'Yeah, those are his prints.'  But those prints are very powerful; to suggest otherwise, its just a bit little [sic] hard to accept."

(Exh. I at 8.)

A prosecutor may not gratuitously attack a defendant's choice of counsel or defense counsel's integrity and veracity.  *Bruno v. Rushen*, 721 F.2d 1193, 1195 (9th Cir. 1983) (prosecutor's comments equating defendant's hiring of counsel with guilt and comments attacking integrity of defense counsel without evidence improper and error of constitutional dimension).  There is no constitutional error unless the comments were prejudicial to the point of denying the defendant a fair trial.  *United States v. Rodrigues*, 159 F.3d 439, 449-51 (9th Cir. 1998), *amended*, 170 F.3d 881 (9th Cir. 1999).  In addition, *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993), requires that a state prisoner show that the error had a substantial and injurious effect or influence in determining the jury's verdict.  *See, e.g., Williams v. Borg*, 139 F.3d  at 745.

The prosecutor's statement was that it was "foolish" of defense counsel to make a particular argument, not, for instance, the defense counsel himself was foolish in general.  It would be a rare trial lawyer of whom it could be said that he or she never made a foolish move or argument in court, and arguing that this was such an instance is not an attack on the integrity of defense counsel.  In addition, this minor remark in the heat of trial could not have had a substantial and injurious effect or influence on the verdict, and thus any hypothetical prosecutorial misconduct was harmless.

Petitioner also contends that the prosecutor disparaged counsel by accusing him of slander and defamation and doing something "slick."  The court of appeal described the factual

9

basis for the claim:

///

> During his closing argument, defense counsel repeatedly accused two witnesses, Officer Furminger and Officer Lantrip, of willfully giving false testimony and he invited the jury to reject the entire testimony of both officers. Defense counsel also criticized the demeanor of these officers and accused Officer Furminger of smirking and laughing at defense counsel's questions. Counsel also accused Officer Furminger of "jimmy[ing] around with the evidence." He suggested that Furminger lied by testifying that Davis had a screwdriver and also suggested that Furminger moved items from the kitchen into the laundry basket in order to strengthen the case against Davis.
>
> During his rebuttal argument to the jury, the prosecutor acknowledged that Officers Furminger and Lantrip were "pretty hostile to defense counsel." The prosecutor then offered the following explanation: "If you need to slander someone here in court, you're protected by a privilege in these proceedings. It's easy to defame someone here in court by these kinds of charges, especially when they're not in here, they're gone, they're not in the room. [¶] Maybe Officer Furminger is a little hostile with the defense attorney for reasons that we can point to within the scope of the evidence in this case. I'll point to one example that might make a fellow like Furminger hostile or angry when his words are twisted, and that was the reference by the attorney very deftly done to the fact that nowhere, he says, in the police report, the one-page narrative of the seven-page report, was there evidence of a screwdriver. But he didn't refer to the balance of the police report where those data could be set out, no reference to that. [¶] He tied the officer down to the one page of the narrative and gave him no opportunity to talk about the balance of the police report where those types of things are to be listed. That might make a guy a little angry when people use his words like that. [¶] Maybe Officer Furminger would be a little hostile, or someone in his shoes would be a little hostile when the defense attorney did something else rather slick in his case. It is important to him to have you think that the first set of sounds that Marci heard were similar-similar to the second set, and that is the words he used. [¶] He talked about a similar noise that Marci heard, that in his view, was the entering bad guy, the phantom crook who took the money. But, you know, that's not what the evidence shows because what Mr. Marci said is that first noise was a seismic noise; not a similar noise, but a seismic noise...."

(Exh. I at 9-10.)

The court of appeal held that these comments were a fair response to defense counsel's playing the "framed by the cops" card and did not amount to a personal attack on counsel's integrity (*id.* at 10).

A prosecutor may fairly rebut defense counsel's contentions. *United States v. Bagley*, 772 F.2d 482, 494 (9th Cir. 1985). Here, the jury might have been inclined to believe the defense argument, thinking that defense counsel would not have made such a serious allegation if it were not true, for fear of the consequences. Thus the prosecutor's rebuttal statement that

10

1   such statements at trial are privileged was a fair response to the attack.  And the reference to

2   counsel's work as "rather slick" was not a personal attack on counsel's integrity, but rather

3   referred specifically to something that counsel had done in cross-examination, which indeed

4   was rather slick – in the sense of skillful.

5        Petitioner also contends that counsel urged the jury to punish him for exercising his

6   right to a jury trial.  The facts are set out by the court of appeal:

> Davis argues he was denied a fair trial because the prosecutor made the following argument during his closing:
> "And you may ask yourselves, some of you-I don't know what you're' thinking, but some of you, I suggest, may be thinking to yourself: Gee, so much effort in this case, so much time, so much money.  Every day these courts are operating and they're making us listen to a case like this, which to me is so clear. [¶] Now I'm putting myself in the mind, perhaps of one of you.  And you say, "How can this be?  Why is it?  What's going on here?  Is there a game behind the game?  Is there a reality behind the surface?"  There's not.  What I say to you is: upon the defendant's entry of his not-guilty plea, I am required to come to this courtroom, I am required to produce these witnesses, I am required to ask questions of jurors and pick a jury, I'm required to make opening statements, required to do all of these things because of that plea; that's our system.  But just because a case is long, just because there's a lot of conversation, does not mean a case has some hidden trick in it."

15   (Exh. I at 10-11.)

16        It is clear from the context of the statement that the prosecutor was doing exactly what

17   he said he was doing, explaining that despite the apparently simple nature of the case the

18   lengthy proceedings did not reflect some hidden motive or purpose.  This was not misconduct.

19        Finally, petitioner contends that the prosecutor committed misconduct by referring to

20   excluded evidence:

> During his rebuttal argument, the prosecutor acknowledged that he had the burden of proof and that the defense was not required to call any witness or produce any evidence.  He then argued that there was a "missing piece of defense evidence" that would have supported the defense theory that Davis was a homeless person looking for shelter.  The prosecutor continued: "That evidence is the defendant's clothes upon his arrest.  [¶] Where are the clothes, Mr. Fredrich?  Where are the clothes, Mr. Fredrich, that would support this defense of homelessness, the clothes that are supposed to stink or be dirty or in the nature of homeless clothing?  Where are those clothes?"
>
> Without citing any authority, Davis characterizes the prosecutor's argument as misconduct.  He argues that the prosecutor should not have referred to the missing clothing because the trial court had previously denied the prosecutor's request to introduce those clothes into evidence.  But Davis improperly ignores the reason this evidence was excluded.  The trial did not find

> that evidence of Davis's clothing was inadmissible. It excluded the evidence because the prosecutor offered it too late-as rebuttal evidence rather than during his case in chief. The condition of Davis's clothing was a subject that the defense raised and pursued during trial. The prosecutor did not commit misconduct by addressing that relevant issue during his closing argument.

(Exh. I at 11-12.)

Given that the evidence was not inadmissible, the comment was simply fair comment on the defense failure to present evidence to support its theory. That is not misconduct. *See United States v. Mende*, 43 F.3d 1298, 1301 (9th Cir. 1995) (prosecutor's comments not improper where they simply reminded jury that defense had failed to present certain evidence).

### 3. Prior Convictions

Petitioner asserts that his Sixth Amendment right to trial by jury was violated when the question of his identity as the person previously convicted was not presented to the jury in the trial of the allegations of previous convictions. There is no federal right to a jury trial on prior convictions used to enhance a sentence. *Apprendi v. New Jersey*, 530 U.S. 466, 488-90 (2000) (excluding prior convictions from facts that increase the penalty for a crime beyond the prescribed statutory maximum and so "must be submitted to a jury, and proved beyond a reasonable doubt."). This claim therefore is without merit.

## CONCLUSION

Because petitioner's rights were not violated in any of the ways he specifies, the state courts' rejections of these claims were not contrary to, nor an unreasonable application of, clearly-established United States Supreme Court authority. The petition for a writ of habeas corpus is **DENIED**. The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: April  21 , 2008.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

G:\PRO-SE\WHA\HC.06\DAVIS488.RUL.wpd